■ NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., et al., Respondents, v THE CONNECTICUT INDEMNITY COMPANY, Respondent, and LUMBERMENS MUTUAL CASUALTY COMPANY et al., Appellants, et al., Defendants. [860 NYS2d 35]—

Order, Supreme Court, New York County (Michael D. Stallman, J.), entered April 27, 2007, which granted defendant Connecticut Indemnity's cross motion for summary judgment; denied cross motions for summary judgment by defendants Lumbermens and United States Fire Insurance Company (US Fire); adjudged and declared that Lumbermens and US Fire

were primary insurers vis-à-vis the umbrella policy plaintiff National Union Fire issued, thereby obligating Lumbermens and US Fire to defend and indemnify tractor trailer operator Bailey in the underlying lawsuit; and adjudged and declared National Union entitled to reimbursement from Lumbermens and US Fire, on a pro rata basis, for the $1,454,640.15 it paid to settle said action, together with interest at the rate of 9% per annum from February 15, 2006, unanimously modified, on the law, the judgment in favor of Connecticut Indemnity vacated; National Union adjudged and declared entitled to reimbursement from Lumbermens in the amount of $1 million, together with prejudgment interest from February 15, 2006, and from US Fire in an amount to be determined after further proceedings consistent herewith, together with prejudgment interest from February 15, 2006; and otherwise affirmed, without costs.

This is an action for a declaratory judgment regarding insurance coverage responsibility among several insurance companies for a $2.4 million dollar settlement in an underlying case. The underlying case involved an accident that occurred on May 3, 1999. That accident occurred when Bailey, who was driving the insured tractor, collided with a disabled truck causing injury to Jon Honkala who had stopped to assist with the disabled truck. Associates Leasing, Inc. (Associates) owned the tractor that Bailey was driving. Associates insured the tractor with defendant Lumbermens. Associates had leased the tractor to Conway Beam Leasing, Inc., who subleased the vehicle to Lee E. Gibson Construction Co., doing business as Sunrise Industries (Gibson/Sunrise). Gibson/Sunrise, in turn, leased the vehicle and its driver Bailey, to Howard's Express, Inc. Each of these lessees/sublessees obtained insurance covering the tractor. It is the apportionment among these various insurance policies that is at issue in this case. This appeal primarily involves what part of the underling settlement is the responsibility of Lumbermens and what part is the responsibility of US Fire.

We reject Lumbermens' argument that Associates did not grant permission to Howard's Express to use the subject tractor, within the meaning of the insurance policy. In New York, proof of ownership of a motor vehicle creates a "very strong presumption" that the driver was using the vehicle with the owner's permission, express or implied, and this presumption continues "unless and until there is substantial evidence to the contrary" (*Tabares v Colin Serv. Sys.*, 197 AD2d 571, 571 [1993]; *see Leotta v Plessinger*, 8 NY2d 449, 461 [1960]). There is no such substantial evidence here.

The Lumbermens policy stated that "[f]or any covered 'auto'

you own, this Coverage Form provides primary insurance." However, the motion court held that a manuscript endorsement in the Lumbermens policy rendered its coverage excess. We do not agree. By its plain terms, the manuscript endorsement refers to a situation "[w]hen you have other insurance for an 'auto' covered by this policy." *You*, in insurance parlance, refers to the insured (here, Associates) (*see e.g. Jeanes v Nationwide Ins. Co.*, 532 A2d 595, 599 [Del Ch 1987]).

Thus, as a coprimary insurer, Lumbermens must reimburse National Union $1 million of the settlement proceeds National Union funded because primary limits must be exhausted before excess coverage can apply.

We next address the allocation of the remaining $454,640.15 among the excess insurers. We cannot take the Legion policy into account in making this allocation because Legion is in liquidation and therefore its limits are not "available coverage" within the meaning of the policies' respective "other insurance" provisions (*Matter of Midland Ins. Co.*, 269 AD2d 50, 67 [2000]).

National Union and Federal provided umbrella coverage. The terms of these policies indicate that they are excess to the excess coverage that Connecticut Indemnity Co. (Connecticut) and US Fire provided.

With regard to Connecticut's coverage, we disagree with the ruling that Gibson/Sunrise's notice was untimely as a matter of law. Under some circumstances, a five-month delay may be unreasonable, but here a question of fact exists as to whether the insured had a good faith belief in nonliability. Where notice to an excess carrier such as Connecticut is in issue, the focus is on whether the insured reasonably should have known that the claim against it would likely exhaust its primary insurance coverage and trigger its excess coverage, and whether any delay between acquiring that knowledge and giving notice to the excess carrier was reasonable under the circumstances (*see Morris Park Contr. Corp. v National Union Fire Ins. Co. of Pittsburgh, Pa.*, 33 AD3d 763 [2006]).

The "bobtail" exclusion in Connecticut's policy is void as against public policy. We decline to enforce a "savings clause" in the policy, which provides coverage up to the minimum amounts the financial responsibility law requires, in the event the bobtail exclusion is held invalid (*see Connecticut Indem. Co. v 21st Century Transp. Co., Inc.*, 186 F Supp 2d 264 [ED NY 2002]). We agree with the reasoning of those courts which hold that permitting an insurer to limit its liability even in cases where its policy exclusion is held to be invalid would render the finding on the issue of validity essentially meaningless (*see Connect-*

*icut Indem. Co. v 21st Century Transp. Co., Inc.*, 186 F Supp 2d 264, 278 [2002]; *R.E. Turner, Inc. v Connecticut Indem. Co.*, 925 F Supp 139, 149 [WD NY 1996]; *Connecticut Indem. Co. v Carela*, — F Supp 2d —, 2007 WL 2363123, 2007 US Dist LEXIS 54891 [D NJ 2007] [applying New York law]; *but see Connecticut Indem. Co. v Hines*, 40 AD3d 903 [2d Dept 2007]). If the exclusion is void because it is against public policy, it can not be saved. Thus, the Connecticut policy must be read as affording liability up to its full limits.

Should the finder of fact ultimately determine that notice to Connecticut was timely, Connecticut and US Fire, as excess carriers, should prorate the $454,640.15 remainder of the settlement in accordance with the limits of their respective policies.

The award of prejudgment interest was proper (CPLR 5001 [a], [b]). Concur—Lippman, P.J., Williams, Moskowitz and Acosta, JJ.